# Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF __RHODE ISLAND__

National Stabilization Agreement of
Sheet Metal Industry Trust Fund,
et als

V.

BB Sign Co., Inc. a/k/a BB Sign
Co., Inc. d/b/a Division 10
Specialties, Inc. a/k/a Division 10
Specialties, et al

## SUBPOENA IN A CIVIL CASE

CASE NUMBER:[1] M.P. No. 04 MBD 10058

TO: BB Sign Co. Inc. a/k/a BB Sign Co. Inc. d/b/a Division 10 Specialties, Inc. a/k/a Division 10 Specialties (121 Liberty St., Quincy, MA 02169) by and through the person with the most knowledge concerning the matters identified on Exhibit A attached hereto

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Shechtman Halperin & Savage, LLP<br>352 Newbury Street<br>Boston, MA 02115 | April 16, 2004<br>2:00 p.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit B attached hereto

| PLACE | DATE AND TIME |
|---|---|
| Schechtman Halperin & Savage, LLP<br>352 Newbury Street<br>Boston, MA 02115 | April 16, 2004<br>2:00 pm.m |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| /s/ | 3/18/04 |
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
| James D. Vannah (650601)   Phone: 401-454-8700<br>101 Dyer Street, Suite 400, Providence, RI 02903 | |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1]

## PROOF OF SERVICE

| | DATE MAR. 22, 2004 | PLACE 191 LIBERTY ST. QUINCY, MA |
|---|---|---|
| SERVED | E.O. RAWJ, ACCOUNTANT P.O. WITNESS $50.00 | A/K/A DIVISION 10 SPECIALTIES, E |

SERVED ON (PRINT NAME): R.R. SIGN CO. INC., A/K/A B.R. SIGN CO. INC. d/b/a DIV. 10 SPECIALTIES, INC.

MANNER OF SERVICE:

SERVED BY (PRINT NAME): FRED W. MACDONALD

TITLE: CONSTABLE

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on MAR. 22, 2004
DATE

SIGNATURE OF SERVER: Fred W. MacDonald

ADDRESS OF SERVER: P.O. BOX 151, ROSLINDALE MA 02131

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

1. Knowledge of the bank statements and statements of account dated at any time from on or about January 1, 2000 through the present relating to all cash, deposits, certificates of deposit, stocks, bonds, checking accounts, savings accounts and the like maintained by BB Sign Co. Inc. a/k/a B B Sign Co. Inc. d/b/a Division 10 Specialties, Inc. a/k/a Division 10 Specialties, W. Edwin Raws ("Raws") and/or Raws d/b/a Division 10 Specialties (collectively, at times, "Defendants"), individually or jointly.

2. Knowledge of all certificates of title and/or purchase, bills of sale, purchase and sale receipts, inventories, and appraisals reflecting the value and present location of the assets outlined below owned by Defendants, individually or jointly, at any time from on or about January 1, 2000 to the present:

   (a) all automobiles, cars, trucks, or the like;
   (b) all insurance policies; and
   (c) furniture, inventory, equipment, fixtures, computers or the like.

3. Knowledge of the accounts receivable including, without limitation the names and addresses of customers of Defendants including their names, addresses and amounts owed, notes receivable, partnerships, trusts, stocks, investments, leases, options, development rights, patents, licenses, goodwill and other assets, tangible or intangible owned by Defendants, individually or jointly, at any time from January 1, 2000 through the present. (All of the assets and tangible and intangible interests enumerated in Paragraphs No. 1, No. 2(a) through (c) and No. 3 above shall hereafter be collectively referred to as the "Property").

4. Knowledge of all real estate owned by Defendants, individually or jointly, at any time from on or about January 1, 2000 to the present, including but not limited to, the value of said real estate, ownership thereof and the indebtedness secured thereby.

5. Knowledge of any real estate or Property belonging to any entity partnership, corporation, trust or the like in which Defendants had an interest, direct or indirect, including without limitation, BB Sign Co., Inc.

6. Knowledge of any transfer of an interest occurring at any time since January 1, 2000 in any real estate or Property owned by Defendants, individually or jointly.

7. Knowledge of any transfer of an interest occurring at any time since January 1, 2000 in any real estate or Property belonging to any entity partnership, corporation, trust or the like in which Defendants had an interest, direct or indirect, including without limitation, BB Sign Company, Inc.

8. Knowledge of all financial statements prepared by, for or executed by Defendants, individually or jointly, at any time from on or about January 1, 2000 through the present.

9. Knowledge of all the income, revenue, commissions, bonuses, interest, dividends, gifts and the like received by Defendants from any source whatsoever since January 1, 2000 to the present.

10. Knowledge of Defendants' wage, payroll, and personnel records for the period during which Defendants were required to make contributions to Plaintiffs under the collective bargaining agreement, July 1, 2000 to the present, including, but not limited to:

   (a) Original Time Cards/Sheets;
   (b) Payroll registers;
   (c) Individual earnings records;
   (d) 941's, State U/C's, W-2's, W-3's and 1099's;
   (e) Cash disbursement journals;
   (f) National Benefit Funds remittance reports; and
   (g) Remittance reports for any other fringe benefit fund to which BB Sign Co. Inc. a/k/a B B Sign Co. Inc. d/b/a Division 10 Specialties, Inc. a/k/a Division 10 Specialties, Raws and/or Raws d/b/a Division 10 Specialties

G:\Sheet Metal Workers\Raws, W. Edwin\Documents\EXHIBIT A 031704.doc

## EXHIBIT B

1. All bank statements and statements of account dated at any time from on or about January 1, 2000 through the present relating to all cash, deposits, certificates of deposit, stocks, bonds, checking accounts, savings accounts and the like maintained by BB Sign Co. Inc. a/k/a B B Sign Co. Inc. d/b/a Division 10 Specialties, Inc. a/k/a Division 10 Specialties, W. Edwin Raws ("Raws") and/or Raws d/b/a Division 10 Specialties (collectively, at times, "Defendants"), individually or jointly.

2. All certificates of title and/or purchase, bills of sale, purchase and sale receipts, inventories, and appraisals reflecting the value and present location of the assets outlined below owned by Defendants, individually or jointly, at any time from on or about January 1, 2000 to the present:

   (a) all automobiles, cars, trucks, or the like;
   (b) all insurance policies; and
   (c) furniture, inventory, equipment, fixtures, computers or the like.

3. All documents evidencing the accounts receivable including, without limitation the names and addresses of customers of Defendants including their names, addresses and amounts owed, notes receivable, partnerships, trusts, stocks, investments, leases, options, development rights, patents, licenses, goodwill and other assets, tangible or intangible owned by Defendants, individually or jointly, at any time from January 1, 2000 through the present. (All of the assets and tangible and intangible interests enumerated in Paragraphs No. 1, No. 2(a) through (c) and No. 3 above shall hereafter be collectively referred to as the "Property").

4. All documents relating to any real estate owned by Defendants, individually or jointly, at any time from on or about January 1, 2000 to the present, including but not limited to, the value of said real estate, ownership thereof and the indebtedness secured thereby.

5. All documents relating to any real estate or Property belonging to any entity partnership, corporation, trust or the like in which Defendants had an interest, direct or indirect, including without limitation, BB Sign Co., Inc.

6. All documents relating to a transfer of an interest occurring at any time since January 1, 2000 in any real estate or Property owned by Defendants, individually or jointly.

7. All documents relating to a transfer of an interest occurring at any time since January 1, 2000 in any real estate or Property belonging to any entity partnership, corporation, trust or the like in which Defendants had an interest, direct or indirect, including without limitation, BB Sign Company, Inc.

8. All financial statements prepared by, for or executed by Defendants, individually or jointly, at any time from on or about January 1, 2000 through the present.

9. All documents evidencing the income, revenue, commissions, bonuses, interest, dividends, gifts and the like received by Defendants from any source whatsoever since January 1, 2000 to the present.

10. All documents necessary to conduct an audit of Defendants' wage, payroll, and personnel records for the period during which Defendants were required to make contributions to Plaintiffs under the collective bargaining agreement, July 1, 2000 to the present, including, but not limited to:

    (a) Original Time Cards/Sheets;
    (b) Payroll registers;
    (c) Individual earnings records;
    (d) 941's, State U/C's, W-2's, W-3's and 1099's;
    (e) Cash disbursement journals;
    (f) National Benefit Funds remittance reports; and
    (g) Remittance reports for any other fringe benefit fund to which BB Sign Co. Inc. a/k/a B B Sign Co. Inc. d/b/a Division 10 Specialties, Inc. a/k/a Division 10 Specialties, Raws and/or Raws d/b/a Division 10 Specialties

G:\Sheet Metal Workers\Raws, W. Edwin\Documents\EXHIBIT A 031704.doc

# UNITED STATES DISTRICT COURT

__EASTERN__ DISTRICT OF __VIRGINIA__

NATIONAL STABILIZATION AGREEMENT
OF THE SHEET METAL INDUSTRY
TRUST FUND, et al.
V.
BB SIGN CO., INC. a/k/a BB SIGN CO.,
INC. d/b/a DIVISION 10 SPECIALTIES
INC., a/k/a DIVISION 10 SPECIALTIES,
et al.

**CERTIFICATION OF JUDGMENT
FOR REGISTRATION IN
ANOTHER DISTRICT**

Case Number:  CA-03-253-A

I, _____Elizabeth H. Paret_____, Clerk of the United States District Court certify that the attached judgment is a true and correct copy of the original judgment entered in this action on _____October 15, 2003_____,
                                                                                                            Date
as it appears in the records of this court, and that

\*   no notice of appeal from this judgment has been filed, and no motion of any kind listed in Rule 4(a) of the Federal Rules of Appellate Procedure has been filed.

**IN TESTIMONY WHEREOF,** I sign my name and affix the seal of this Court on

_____January 8, 2004_____                    Elizabeth H. Paret
            Date                                                          Clerk

                                                                        _[signature]_
                                                                        (By) Deputy Clerk

---

\*Insert the appropriate language: ..."no notice of appeal from this judgment has been filed, and no motion of any kind listed in Rule 4(a) of the Federal Rules of Appellate Procedure has been filed." ..."no notice of appeal from this judgment has been filed, and any motions of the kinds listed in Rule 4(a) of the Federal Rules of Appellate Procedure (†) have been disposed of, the latest order disposing of such a motion having been entered on [date]." ..."an appeal was taken from this judgment and the judgment was affirmed by mandate of the Court of Appeals issued on [date]. ..."an appeal was taken from this judgment and the appeal was dismissed by order entered on [date]."

(†Note: The motions listed in Rule 4(a), Fed. R. App. P., are motions: for judgment notwithstanding the verdict; to amend or make additional findings of fact; to alter or amend the judgment; for a new trial; and for an extension of time for filing a notice of appeal.)

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

NATIONAL STABILIZATION AGREEMENT
OF SHEET METAL INDUSTRY
TRUST FUND, et al.

            Plaintiffs

v.

BB SIGN CO., INC.
a/k/a B B SIGN CO., INC.
d/b/a DIVISION 10 SPECIALTIES, INC.
a/k/a DIVISION 10 SPECIALTIES, et al.

            Defendants

CIVIL ACTION NO. 03-253-A (JCC)



OCT 15 2003

## DEFAULT JUDGMENT AND ORDER

Upon consideration of Motion for Default Judgment submitted by Plaintiffs, the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI Trust Fund"), Sheet Metal Workers' National Pension Fund ("NPF", International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI") (f/k/a National Training Fund for the Sheet Metal and Air Conditioning Industry) Sheet Metal Workers' International Association Scholarship Fund ("SMWIASF"), National Energy Management Institute Committee ("NEMI") and Sheet Metal Occupational Health Institute Trust Fund ("SMOHI") (NPF, ITI, SMWISF, NEMI and SMOHI are jointly referred to as "National Funds" and together with SASMI as "Funds"), the Magistrate Judge's Report and Recommendation and the absence of exceptions thereto, and the entire record in this case, it appearing to the Court that Defendants, BB Sign Co., Inc. a/k/a B B Sign Co., Inc. d/b/a Division 10 Specialties, Inc. a/k/a Division 10 Specialties ("BB Sign") and W. Edwin Raws, individually and d/b/a Division 10 Specialties, Inc. a/k/a Division 10 Specialties ("Individual Defendant" and together with BB Sign "Defendants") have failed to plead or otherwise

113228-4



defend in this action, that a default has been entered, and that there is no just reason for delay, it is ORDERED by the Court, this _____ day of _____, 2003:

1. The Court adopts the Magistrate Judge's Report and Recommendation and grants the Funds' Motion for Default Judgment.

2. Individual Defendant and BB Sign are each employers under ERISA, 29 U.S.C. §100215 (5), (11) and (12).

3. Individual Defendant is the alter ego of BB Sign.

4. Judgment by default is entered in favor of the SASMI against Defendants, jointly and severally, in the amount of $32,559.79, comprised of:

 (a) $22,721.60 in delinquent monthly contributions estimated for the period July 2000 through April 2003;

 (b) $4,478.88 in liquidated damages for untimely monthly contributions due for the period July 2000 through April 2003;

 (c) $2,138.60 in interest accrued through June 15, 2003;

 (d) $2,576.61 in attorneys' fees incurred through June 10, 2003; and

 (e) $644.10 in attorneys' costs incurred through June 10, 2003.

5. Judgment by default is entered in favor of the National Funds against BB Sign in the amount of $122,685.66; comprised of:

 (a) for the NPF, the amount of $118,356.00 comprised of:

  (i) $87,142.80 in delinquent monthly contributions estimated for the period July 2000 through April 2003;

(ii) $13,784.64 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period July 2000 through April 2003;

(iii) $17,428.56 in liquidated damages for the period July 2000 through April 2003;

(b) for the ITI, the amount of $2,893.46 comprised of:

(i) $2,128.80 in delinquent monthly contributions estimated for the period July 2000 through April 2003;

(ii) $338.90 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period July 2000 through April 2003;

(iii) $425.76 in liquidated damages for the period July 2000 through April 2003;

(c) for the SMOHI, the amount of $511.86 comprised of:

(i) $374.40 in delinquent monthly contributions estimated for the period July 2000 through April 2003;

(ii) $62.58 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period July 2000 through April 2003;

(iii) $74.88 in liquidated damages for the period July 2000 through April 2003;

(d) for the SMWIASF, the amount of $156.61 comprised of::

(i) $120.00 in delinquent monthly contributions estimated for the period August 2001 through April 2003;

  (ii) $12.61 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period July 2000 through April 2003;

  (iii) $24.00 in liquidated damages for the period July 2000 through April 2003;

 (e) for the NEMI, the amount of $767.73 comprised of:

  (i) $561.60 in delinquent monthly contributions estimated for the period July 2000 through April 2003;

  (ii) $93.81 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period July 2000 through April 2003;

  (iii) $112.32 in liquidated damages for the period July 2000 through April 2003;

6. Judgment by default is entered in favor of the National Funds against Individual Defendant in the amount of $43,432.22; comprised of:

 (a) For the NPF, the amount of $41,937.53 comprised of:

  (i) $33,330.00 in delinquent monthly contributions estimated for the period June 2002 through April 2003;

  (ii) $1,941.53 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period June 2002 through April 2003; and

  (iii) $6,666.00 in liquidated damages for the period June 2002 through April 2003.

 (b) for the ITI, the amount of $996.54 comprised of:

  (i) $792.00 in delinquent monthly contributions estimated for the period June 2002 through April 2003;

  (ii) $46.14 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period June 2002 through April 2003;

  (iii) $158.40 in liquidated damages for the period June 2002 through April 2003;

(c) for the SMOHI, the amount of $166.09 comprised of:

  (i) $132.00 in delinquent monthly contributions estimated for the period June 2002 through April 2003;

  (ii) $7.69 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period June 2002 through April 2003;

  (iii) $26.40 in liquidated damages for the period June 2002 through April 2003;

(d) for the SMWIASF, the amount of $83.05 comprised of:

  (i) $66.00 in delinquent monthly contributions estimated for the period August 2001 through April 2003;

  (ii) $3.85 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period June 2002 through April 2003;

  (iii) $13.20 in liquidated damages for the period June 2002 through April 2003;

(e) for the NEMI, the amount of $249.12 comprised of:

      (i)     $198.00 in delinquent monthly contributions estimated for the period August 2001 through April 2003;

      (ii)    $11.52 in interest accrued through June 15, 2003 on monthly contributions estimated to be owed for the period June 2002 through April 2003;

      (iii)   $39.60 in liquidated damages for the period June 2002 through April 2003;

7. Judgment by default is entered in favor of the National Funds against Defendants, jointly and severally in the amount of $5,627.83; comprised of:

      (a)    attorneys' fees of $5,326.39 incurred from July 27, 2002 through June 10, 2003; and

      (b)    attorneys' costs of $391.44 incurred from July 27, 2002 through June 10, 2003.

8. Within twenty (20) days of the entry of this Order, Defendants shall fully and accurately complete and submit to the Funds any and all then outstanding remittance reports with all required information including the name and social security number of each employee, the hours worked, wages paid and contributions owed for that month together with a check for the full amount of the contributions owed.

9. Defendants shall jointly and severally pay to the National Funds additional interest at twelve percent (12%) per year, in accordance with the Funds' governing documents, on the amount of any delinquent monthly contributions awarded in this Order or hereafter due them, including any additional contributions due for the period July 2000 through April 2003, from the date the contribution was due through the date payment is finally made.

10. Defendants shall jointly and severally pay to the SASMI Trust Fund additional interest calculated at the rates provided for under 26 U.S.C. §6621, as from time to time amended, on the amount of any delinquent monthly contributions awarded in this Order or hereafter due them, including any additional contributions due for the period from the date the contribution was due through the date payment is finally made.

11. BB Sign shall pay to the National Funds additional liquidated damages equal to twenty percent (20%) of the amount of any additional delinquent contributions due them for the period July 2000 through April 2003, and for any month thereafter.

12. Individual Defendant shall pay to the National Funds additional liquidated damages equal to twenty percent (20%) of the amount of any additional delinquent contributions due them for the period June 2002 through April 2003, and for any month thereafter.

13. Defendants shall jointly and severally pay to the SASMI Trust Fund additional liquidated damages equal to twenty percent (20%) (or such other amount as prescribed under the SASMI Trust Fund's Rules and Regulations) of the amount of any additional delinquent contributions for the period July 2000 through April 2003 and for any month thereafter.

14. Defendants shall submit to an audit of its wage, payroll, and personnel records for all periods for which Defendants are obligated to contribute to the Funds within twenty (20) days of the date this Order becomes final, and Defendants shall jointly and severally pay all contributions, interest, and liquidated damages determined from such audit to be due, as well as the costs of such audit.

15. Defendants shall jointly and severally pay to the Funds any additional reasonable attorneys' fees and costs incurred thereafter in connection with this case to enforce and collect this

judgment. If any such further action by the Funds is required, they may apply to this Court or to the Court in which enforcement is sought for further reasonable attorneys' fees and costs in addition to those set out in Paragraphs 4 through 7 above. See Free v. Briody, 793 F.2d 807 (7th Cir.1986).

16. Because of Defendants' persistent failure to meet their reporting and payment obligations to the Funds under the terms of the collective bargaining agreements, Defendants their officers, agents, servants, employees, attorneys, and all persons acting on its behalf or in conjunction with them shall be and hereby are restrained and enjoined from refusing to file complete, proper and timely remittance reports with accompanying contributions for all periods for which Defendants are obligated to do so under the current and any future collective bargaining agreement(s) to which they are bound.

17. If Defendants fail to comply with any of the terms of this Order, the Funds may, in addition to pursuing the remedies provided under Federal Rule of Civil Procedure 69, reopen this case upon motion to this Court and notice to Defendants, and may at that time ask for further appropriate monetary and/or injunctive relief.

18. This Default Judgment and Order is enforceable by the Funds individually, singly or jointly, or by their agent.

10/15/03
Date

BY THE COURT

JAMES C. CACHERIS,         J.
United States District Judge

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

113228-4                                    8